Jamee H. Barrett, Plaintiff-Appellant, v. Edward Fritz, Defendant-Appellee.

Gen. No. 50,803.

First District, Third Division.

July 3, 1968.

Edward J. Bradley, of Chicago, for appellant.

Dowd, Dowd and Dowd, of Chicago (Joseph V. Dowd and Philip J. McGuire, of counsel), for appellee.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This suit arose out of an injury sustained by plaintiff, Jamee H. Barrett, on a golf course. She brought suit against defendant, Edward Fritz, to recover damages incurred as a result of that injury. After a trial the

jury returned a verdict in favor of defendant and plaintiff appealed.

Plaintiff contends on appeal that the court erred in giving an instruction on assumption of risk under the facts of this case; that, even if such rule of law were applicable, the instruction given on the affirmative defense was erroneous, and that the court erred in striking a paragraph of plaintiff's complaint which charged defendant with negligently failing to keep a good and sufficient lookout.

Plaintiff testified that on September 3, 1956, she was playing golf at Edgewater Golf Course in Chicago in a foursome with her husband and another couple in the finals of the husband and wife championship. She and her husband had been members of the club for seven years prior to the day in question. The course is very tight and relatively short with narrow fairways. If a golfer sliced or hooked a ball, in all likelihood it would go into the next fairway. The day of the occurrence was a clear day with a rather strong wind.

Plaintiff and her group finished the 17th hole, left the green and walked to the 18th tee. The 18th tee is about 40 yards from the 17th green and 160 yards from the 17th tee. Before leaving the 17th green plaintiff looked back and saw no one at the 17th tee. At the 18th tee plaintiff walked to the ball washer (about 10 feet from the tee) while another member of her group teed off.

Meanwhile defendant Fritz and two other men, Quinlan and O'Keefe, arrived at the 17th tee and defendant teed off first. The 17th hole is about 135 yards long. He saw the foursome at the 18th tee. He selected a number four wood club and hit the ball which went directly toward the 17th green. He lost sight of it while it was rising. The next he saw of the ball it was going into the trees near the 18th tee. Defendant's handicap at the

time of the incident was 36, which indicates that he was not a good golfer.

One of his companions was able to follow the ball and saw it go quite high, veer left and go into a tree. At no time did defendant or any one of his companions yell "fore."

Plaintiff was struck on the head by the ball and knocked unconscious. She suffered brain injury and thereafter underwent major operations.

Plaintiff first contends that the court erred in giving an instruction on assumption of risk under the facts of this case. A study of Illinois law shows that the courts of this state, with few exceptions, have limited the application of the doctrine of assumption of risk to master-servant cases and cases involving a contractual relationship between plaintiff and defendant. The Illinois Supreme Court in Pennsylvania Co. v. Backes, 133 Ill 255, 24 NE 563, refused to apply the doctrine to a negligence action and said on page 262:

> "But in this case the relation of master and servant did not exist between the plaintiff and the railroad company. The former was a stranger to the latter. He was not employed by the company, and had nothing to do with it or its employees. Appellee was a laborer in the employ of the Star and Crescent Flour Mills Company. His business was to assist in moving cars on the scale platform and shovel wheat from them into the shed of the mill company, and we are inclined to hold that the exemption of the master, growing out of the relation of master and servant, and the servant's contract to assume ordinary risks incident to the business, does not apply."

The court adhered to that position in later cases such as Conrad v. Springfield Consol. Ry. Co., 240 Ill 12, 88 NE 180, wherein it stated at page 17:

"Appellant's contention that appellee must be held, as a matter of law, to have assumed the risk cannot be sustained, since the doctrine of the assumption of risk is only applicable to cases arising between master and servant. Shoninger Co. v. Mann, 219 Ill 242."

The Appellate Court cases are similar in language and limitation. In Davis v. Springfield Lodge No. 158, 24 Ill App2d 102, 164 NE2d 243, the court refused to allow the defense of assumption of risk where plaintiff, a long-time member of the defendant lodge, was injured on the lodge premises. The court held that the "doctrine of assumption of risk is applicable only in cases arising between master and servant."

The courts have sometimes spoken of the doctrine in terms of the contractual relation between the parties but generally have not gone so far as to extend the application to instances wherein no such relation exists. See Mueller v. Phelps, 252 Ill 630, 97 NE 228; Walsh v. Moore, 244 Ill App 458, and Reed v. Zellers, 273 Ill App 18.

As defendant points out, there have been some cases in which the doctrine was applied without use of the terms of master-servant or contractual relationship of the parties. The court in Murphy v. White City Amusement Co., 242 Ill App 56, allowed the defense but did so because the plaintiff had knowingly contracted for a dangerous ride. Therefore, there was a contractual relationship in that case, although the court did not specifically refer to that as the reason for allowing application of the doctrine of assumption of risk. In Campion v. Chicago Landscape Co., 295 Ill App 225, 14 NE2d 879, the plaintiff sought recovery from the operator of a public fee golf course in Chicago. The court discussed the applicability of the doctrine and set forth

pertinent language from many cases. The court evidently felt that the defense of assumption of risk should be available to a defendant in a golf case, but the language so indicating was in fact obiter dictum since the court first found that "plaintiff failed to show that defendant was guilty of any negligence proximately causing the injury to plaintiff, . . . ." The judgment in favor of plaintiff was therefore reversed. Leave to appeal was denied by the Supreme Court. However, that does not necessarily indicate agreement by the Supreme Court with the reasoning and language of the Appellate Court.

The Appellate Court in Hensley v. Hensley, 62 Ill App2d 252, 210 NE2d 568, refused application of the doctrine in a negligence action. The court said on page 259:

> "In support of his position that the doctrine has been applied in cases not involving the master servant relationship, he cites Brownback v. Thomas, 101 Ill App 81, and Campion v. Chicago Landscape Co., 295 Ill App 225, 14 NE2d 879. Assuming that these cases support defendant's position, neither opinion cites authority sufficiently persuasive to cause this court to disregard the clear pronouncement of our Supreme Court. However, even if we did agree with him, we do not believe that it is the function of an appellate court to overrule or attempt to overrule or criticize the decisions of the highest judicial tribunal of our state or nation. We hold that the defense of the assumption of the risk is not available to the defendant in this case and therefore the trial court's refusal to instruct on this defense was not error."

See also Maytnier v. Rush and Chicago Nat. League Ball Club, Inc., 80 Ill App2d 336, 225 NE2d 83.

Plaintiff and defendant have cited numerous cases from other jurisdictions dealing with assumption of risk generally and with regard to golf cases. While a study of those cases presents clear arguments for and against the application of the doctrine, we feel, as did the court in Hensley, supra, that under the Illinois case law, we must hold that the giving of the instruction of assumption of risk in this case was error.

The doctrine of assumption of risk, if applicable to an injury sustained by a golfer, would presuppose that the plaintiff was participating in activities which exposed him or her to the risk of the injury complained of; that the dangers involved were the dangers which ordinarily accompany the activities contemplated in participating in the game of golf; that the plaintiff knew, or by the exercise of ordinary care should have known, this danger existed and realized the possibility of injury from playing the game of golf on the day in question, and that some one or more of these dangers were the cause of plaintiff's injuries. We feel that such a defense is a sound one in an action such as this involving an injury to a golfer. However, because of the decisions of our Supreme Court, the most recent of which was handed down several decades ago, to the effect that this defense may be employed only in actions between master and servant, and in contractual relationships, we are in no position to sanction its use in this case. We do believe that the restricted application of this defense should be reviewed.

The above holding does not change our position as expressed in Sweeney v. Matthews, 94 Ill App2d 6, 236 NE2d 439. In that case we held that the doctrine of assumption of risk could not logically be prohibited in strict tort liability actions for the reasons set forth therein.

Plaintiff further contends that the instruction given on the affirmative defense of assumption of risk was erroneous in that it did not include all the essential elements necessary to prove the defense. In view of our holding that assumption of risk could not properly be invoked as a defense, the question of the sufficiency of the instruction on assumption of risk need not be discussed.

■■ Plaintiff finally contends that the court erred in striking the paragraph of plaintiff's complaint which charged defendant with negligently failing to keep a good and sufficient lookout. The refusal of a court to instruct the jury upon the theory of a party is reversible error when and only when the party introduced evidence in support of that theory. (Blachek v. City Ice & Fuel Co., 311 Ill App 1, 35 NE2d 416.) It is argued that there was ample evidence in the record to support the allegation. The record shows that defendant hit his ball into the air, lost sight of it and did not see it again until it entered the trees where plaintiff was standing. One of defendant's companions saw the ball the entire time it was in the air. It is clear that defendant sought to keep his ball in view although, for a time, he lost sight of it. Losing sight of the ball differs considerably from failure to keep a lookout for it. After an examination of the instructions we conclude that the jury was instructed adequately based upon the evidence introduced in the case. The paragraph was properly stricken for lack of any evidence in support thereof in the record.

The judgment in favor of defendant is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.